UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

CHRISTOPHER OLDACRE, individually and on behalf of all others similarly situated,

                              Plaintiff,

v.

ECP-PF CT OPERATIONS, INC.,

                              Defendant.

Civil Case No.: 22-cv-00577(JLS)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE ACTION

JACKSON LEWIS P.C.
*ATTORNEY FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
    *Jeffrey W. Brecher, Esq.*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. 3

Preliminary Statement ............................................................................................. 7

Procedural History and Factual Background ........................................................ 10

Argument ............................................................................................................... 13

    I.    Arbitration of this Matter is Required Pursuant to The FAA .................. 13

           A.  The Parties Agreed to Arbitrate ........................................................ 14

           B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement ........... 15

    II.   The Court Should Stay This Case Pending The Outcome of Proceedings Before The Arbitrator ............................................................................................. 17

Conclusion ............................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abdullayeva v. Attending Homecare Servs. LLC*,
928 F.3d 218 (2d Cir. 2019)..........................................................................................14, 15

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
307 F.3d 24 (2d Cir. 2002)....................................................................................................17

*Arciello v. Cnty. of Nassau*,
2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. Sept. 20, 2019)....................................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..............................................................................................................13

*Badinelli v. The Tuxedo Club*,
183 F. Supp. 3d 450 (S.D.N.Y. 2016)..................................................................................14

*Beijing Shougang Mining Ins. Co. v. Mongolia*,
11 F.4th 144 (2d Cir. 2021) .................................................................................................15

*Boss Worldwide LLC v. Crabill*,
2020 U.S. Dist. LEXIS 47462 (S.D.N.Y. Mar. 16, 2020) ....................................................16

*Camferdam v. Ernst & Young Int'l, Inc.*,
2004 U.S. Dist. LEXIS 9092 (S.D.N.Y. May 19, 2004)......................................................16

*Carrera v. DT Hospitality Grp.*,
2021 U.S. Dist. LEXIS 210894 (S.D.N.Y. Nov. 1, 2021).....................................................9

*Caul v. Petco Animal Supplies, Inc.*,
2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021)...................................................9

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ....................................................................................................16

*Daly v. Citigroup, Inc.*,
939 F.3d 415, 421 (2d Cir. 2019).........................................................................................15

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018).........................................................................................................13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987).................................................................................................14

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)..........................................................................................................13

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004) ...........................................................................................15

*Horowitz v 148 S. Emerson Assoc. LLC*,
  888 F.3d 13 (2d Cir. 2018) ...............................................................................................6

*Hussain v. Pak. Int'l Airlines Corp.*,
  2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012).............................................8

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015)...........................................................................................17

*Leroy v. Amedisys Holding LLC*,
  2022 U.S. Dist. LEXIS 23525 (W.D.N.Y. Feb. 9, 2022) ..............................................15

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
  252 F.3d 218 (2d Cir. 2000) ...........................................................................................17

*Marcus v. Frome*,
  275 F. Supp. 2d 496 (S.D.N.Y. 2003)............................................................................17

*McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*,
  35 F.3d 82 (2d Cir. 1994)...............................................................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...........................................................................................................15

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998).............................................................................................17

*Randle v. Conduent Inc.*,
  2020 U.S. Dist. LEXIS 68162 (W.D.N.Y. Apr. 17, 2020) ......................................13, 14

*Rath v. Joanne Stores, LLC*,
  2022 U.S. Dist. LEXIS 154200 (W.D.N.Y. Aug. 26, 2022) ...........................................8

*Rodrigue v. Lowe's Home Ctrs., LLC*,
  2021 U.S Dist. LEXIS 162849 (E.D.N.Y. Aug. 27, 2021)..............................................9

*Ryan v. JPMorgan Chase & Co.*,
  924 F. Supp. 2d 559 (S.D.N.Y. 2013)............................................................................14

*Serebryakov v. Golden Touch Transp. of NY, Inc.*,
  2015 U.S. Dist. LEXIS 36667 (E.D.N.Y. Mar. 24, 2015).............................................16

*Vera v. Saks & Co.*,
   218 F. Supp. 2d 490 (S.D.N.Y. 2002) ...........................................................................17

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003)............................................................................................17

*Zhu v. Hakkasan NYC LLC*,
   291 F. Supp. 3d 378 (S.D.N.Y. 2017)............................................................................14

**State Cases**

*Express Indus. & Terminal Corp. v. N.Y. State DOT*,
   93 N.Y.2d 584 (1999) ....................................................................................................14

*Gardner v. D&D Elec. Constr. Co., Inc.*,
   2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y. Cnty. Aug. 7, 2019) ..................................8

*Gillman v. Chase Manhattan Bank*,
   73 N.Y.2d 1 (1988) ........................................................................................................14

*Hunter v. Planned Bldg. Servs., Inc.*,
   2018 N.Y. Misc. LEXIS 2896 (Sup. Ct. Queens Cnty. June 11, 2018)............................8

*Konkur v. Utica Academy of Science Charter Sch.*,
   2022 N.Y. LEXIS 70 (Feb. 10, 2022)...............................................................................9

*Nicholson v. Alliance Nursing Staffing*,
   2019 N.Y. Misc. LEXIS 22473 (Sup. Ct., Bronx Cnty. Apr. 30, 2019)............................9

*Vega v. CM & Assoc. Constr. Mgt., LLC*,
   175 A.D.3d 1144 (1st Dep't 2019) ...................................................................................9

**Statutes**

NYLL § 191............................................................................................................7, 8, 9, 10

NYLL § 198.....................................................................................................................7, 8, 9

NYLL § 198-b............................................................................................................................9

NYLL § 218...............................................................................................................................8

9 U.S.C. § 3 ...................................................................................................................*passim*

**Other Authorites**

Fed. R. Civ. P. 41(d) ..................................................................................................................6

Defendant, ECP-PF CT Operations Inc. ("Planet Fitness"), hereby moves for an Order, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA"), staying this action and compelling arbitration.

Because Plaintiff signed an arbitration agreement requiring him to arbitrate the claims asserted in the Complaint, this action should be stayed, and Plaintiff ordered to proceed with his claims in arbitration pursuant to the FAA.

Plaintiff filed a nearly identical Complaint against Defendant on January 31, 2022, approximately seven months ago. *See* Case No. 22-CV-88 (WMS) (W.D.N.Y.). The case was assigned to Judge Skretny. In response to the Complaint, like here, Defendant moved to compel arbitration and stay the proceedings. (Dkt. No. 16, 17). Plaintiff did not file any opposition, but instead, voluntarily dismissed his claims on April 20, 2022. Yet he has now refiled the exact same action here. Notably, under Fed. R. Civ. P. 41(d), if a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court may order the plaintiff to pay all or part of the costs of that previous action, including attorneys' fees. Fed. R. Civ. P. 41(d); *Horowitz v 148 S. Emerson Assoc. LLC*, 888 F.3d 13 (2d Cir. 2018). "Rule 41(d)'s purpose is clear and undisputed: to serve as a deterrent to forum shopping and vexatious litigation." *Id.* at 25. (internal quotation omitted). The rule seeks to deter litigants who "file complaints and quickly dismiss them, perhaps in reaction to initial unfavorable rulings, or hoping for a subsequent case assignment to a judge they view as more favorable." *Id.* at 26.[1]

Defendant now moves to compel arbitration and stay this action for the same reasons set forth in its original motion in the first filed case.

---

[1] Defendant reserves its right to seek costs and attorneys' fees as a result of this duplicative filing under Fed. R. Civ. P. 41(d).

## PRELIMINARY STATEMENT

The Complaint, brought as a "class action," alleges a single cause of action, violation of New York Labor Law § 191 ("NYLL"), which Plaintiff claims is subject to private enforcement under NYLL § 198. NYLL § 191 sets forth the frequency in which various classes of workers must be paid. As relevant here, Plaintiff alleges he was employed as a "manual worker" and thus was required to be paid weekly. Planet Fitness paid him bi-weekly. He claims that as a result of this violation, he is entitled to "liquidated damages" in the amount of any wages that were not paid on a weekly basis—*i.e.*, one half of the wages that he was already paid. Notably, the Complaint does not allege Plaintiff was underpaid or unpaid. The Complaint does not claim, for example, that Planet Fitness *failed* to pay him all the wages he was promised on the regularly scheduled paydays or that he was paid *less* than what he was entitled, just that Planet Fitness processed payroll on a bi-weekly basis instead of a weekly basis.

Here's an example of what Plaintiff claims is owed for this payroll processing error:

> At the time Plaintiff's employment ended, he was earning $13.50 per hour. Assuming he worked 40 hours he would have earned $540 per week or $1,080 every two weeks. Even if he was paid the $1,080 every two weeks as promised, Plaintiff alleges that because he should have been paid weekly, instead of bi-weekly, one week of his paycheck was late and therefore he is entitled to the full wages (not just the interest) on the wages that were paid bi-weekly instead of weekly—*i.e.*, an additional $540 per week (or half his wages every pay period).

Extrapolated to a full year, he would be entitled to an additional $14,040 per year—a 50% pay increase. And because the New York statute of limitation for wage claims is six years, the damages for *one* employee (who worked the six-year period) would equal $84,240. And for a mid-size employer with 500 employees, the damages resulting from an alleged payroll processing error (using these assumptions) would be a whopping $42,120,000 (and recall, these are wages that have already been paid). For *one* larger employer, say with 5,000 employees, the damages

7

would be $421,200,000. The alleged damages as applied to all employers in New York who mistakenly processed payroll bi-weekly instead of weekly, would be in the *billions*.

This is not the law. While NYLL § 191 sets forth the frequencies in which various types of employees are required to be paid and requires employers to pay "manual workers" on a weekly basis, the Labor Law does not provide for a *private* right of action, let alone one for liquidated damages, for errors relating to the frequency in which payroll is processed. Rather, the Legislature has vested the power to enforce the law (and impose fines depending on the severity of the violation) with the New York State Department of Labor. *See* NYLL § 218 (permitting the Commissioner of Labor to issue, in an administrative action, an order imposing a civil penalty in an amount of $1,000 for a first violation, $2,000 for a second violation, and $3,000 for a third and subsequent violations). We acknowledge that the law on this point is, however, unsettled. *See Rath v. Joanne Stores, LLC*, 2022 U.S. Dist. LEXIS 154200, at *8 (W.D.N.Y. Aug. 26, 2022) (Skretny) ("New York State[] courts (and federal courts in this state applying New York Labor Law) disagree whether there is a private right of action for violation of § 191) (citing cases); *see also Hunter v. Planned Bldg. Servs., Inc.*, 2018 N.Y. Misc. LEXIS 2896 *4 (Sup. Ct. Queens Cnty. June 11, 2018) ("The Court finds based upon the statutory provisions and the interpreting case law that plaintiff has no private right of action under NYLL § 198 (1-a) for a frequency of payment violation of NYLL § 191(1)(a)(i) where there is no claim for unpaid wages."); *Hussain v. Pak Int'l Airlines Corp.*, 2012 U.S. Dist. LEXIS 152254 *8 (E.D.N.Y. Oct. 23, 2012) (describing violations of the frequency of pay provisions under NYLL § 191 as "technical violations" and holding the "NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment" and noting that Section 198(1-a) applies to "underpayment of wages"); *Gardner v. D&D Elec. Constr. Co., Inc.*, 2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y.

Cnty. Aug. 7, 2019) (same); *Nicholson v. Alliance Nursing Staffing*, 2019 N.Y. Misc. LEXIS 22473 (Sup. Ct., Bronx Cnty. Apr. 30, 2019) (granting motion to dismiss frequency of pay claim under NYLL § 191); *Arciello v. Cnty. of Nassau*, 2019 U.S. Dist. LEXIS 161167 *21-23 (E.D.N.Y. Sept. 20, 2019) ("The Second Circuit has not addressed whether NYLL § 198 provides a remedy for the failure to timely pay overtime wages. Courts in the Southern District of New York and this District have opined that the NYLL may not contain such a remedy") *with Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019) (recognizing private right of action for pay frequency violation); *Rodrigue v. Lowe's Home Ctrs., LLC*, 2021 U.S Dist. LEXIS 162849 *14 (E.D.N.Y. Aug. 27, 2021) (following *Vega*); *Carrera v. DT Hospitality Grp.*, 2021 U.S. Dist. LEXIS 210894 *27-29 (S.D.N.Y. Nov. 1, 2021) (same); *Caul v. Petco Animal Supplies, Inc.*, 2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021).

Notably, following the *Vega* decision, which incorrectly recognized an implied private right of action and opened the floodgates to cases just like this one, the New York Court of Appeals decided *Konkur*, which undermines its holding and logic. *See Konkur v. Utica Academy of Science Charter Sch..*, 2022 N.Y. LEXIS 70 (Feb. 10, 2022). *Vega's* holding that an implied right of action should be inferred we submit, is no longer good law following *Konkur*. In *Konkur*, the Court of Appeals addressed whether another section of the NYLL § 198-b (prohibiting employers from requiring employees to "kick back" wages to their employer) provides a private right of action. The Court held because the statutory scheme in Article 6 already expressly provides "two robust enforcement mechanisms, indicating that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted," it must "decline to find *another* enforcement mechanism beyond the statute's already comprehensive scheme." *Id.* at *7 (internal quotations and citation omitted) (emphasis added). And controlling on the substantive claim here,

9

the Court stated very clearly no private right of action can be imposed for <u>Article 6 provisions</u> because the Legislature has already made such choices:

> "Where the legislature intended for *an article 6 provision* to be enforced individually, it expressly provided a private right of action." *Id.* at *8 (emphasis added).

NYLL § 191, is, of course, an "*article 6 provision.*" Thus, under binding precedent, no private right of action can be implied. Defendant also denies that the Plaintiff—who worked as a Front Desk Associate—is a "manual worker" subject to the weekly pay requirement.

We provide the above discussion regarding the underlying claim only for purposes of background. Here, the Court does not need to address these substantive issues because the Plaintiff signed an arbitration agreement requiring the Plaintiff to arbitrate his claims, so the arbitrator will have to resolve the underlying issues relating to the merits. In this motion, the Defendant requests only that the Court issue an Order, pursuant to Section Three of the FAA, staying this action and requiring the Plaintiff to arbitrate his claims on an individual basis.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiff was employed by Planet Fitness for only three months. He was hired on October 14, 2021, as a Front Desk Associate at the Cheektowaga, NY location and resigned on or about January 13, 2022. *See* Declaration of John Hrinda, ¶ 6, dated September 13, 2022 ("Hrinda Decl."). As a Front Desk Associate, Plaintiff's responsibilities included, among other things, greeting guests, signing up new club members, giving tours, answering questions, and providing billing updates. He was also responsible for selling Planet Fitness apparel (hats, shirts etc.), tanning lotion, beverages (*e.g.*, Gatorade, water), and protein bars. *Id.* at ¶ 7. And Plaintiff had some responsibility for ensuring the cleanliness of the gym. *Id.*

One of the perks of employment is the ability to become a "Black Card Member" of the gym, permitting the employee to use *any* Planet Fitness gym in the United States (corporate or

the Court stated very clearly no private right of action can be imposed for <u>Article 6 provisions</u> because the Legislature has already made such choices:

> "Where the legislature intended for *an article 6 provision* to be enforced individually, it expressly provided a private right of action." *Id.* at *8 (emphasis added).

NYLL § 191, is, of course, an "*article 6 provision.*" Thus, under binding precedent, no private right of action can be implied. Defendant also denies that the Plaintiff—who worked as a Front Desk Associate—is a "manual worker" subject to the weekly pay requirement.

We provide the above discussion regarding the underlying claim only for purposes of background. Here, the Court does not need to address these substantive issues because the Plaintiff signed an arbitration agreement requiring the Plaintiff to arbitrate his claims, so the arbitrator will have to resolve the underlying issues relating to the merits. In this motion, the Defendant requests only that the Court issue an Order, pursuant to Section Three of the FAA, staying this action and requiring the Plaintiff to arbitrate his claims on an individual basis.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiff was employed by Planet Fitness for only three months. He was hired on October 14, 2021, as a Front Desk Associate at the Cheektowaga, NY location and resigned on or about January 13, 2022. *See* Declaration of John Hrinda, ¶ 6, dated September 13, 2022 ("Hrinda Decl."). As a Front Desk Associate, Plaintiff's responsibilities included, among other things, greeting guests, signing up new club members, giving tours, answering questions, and providing billing updates. He was also responsible for selling Planet Fitness apparel (hats, shirts etc.), tanning lotion, beverages (*e.g.*, Gatorade, water), and protein bars. *Id.* at ¶ 7. And Plaintiff had some responsibility for ensuring the cleanliness of the gym. *Id.*

One of the perks of employment is the ability to become a "Black Card Member" of the gym, permitting the employee to use *any* Planet Fitness gym in the United States (corporate or

franchise locations) for no fee, subject to the limitations set forth in the membership agreement. *Id.* at ¶ 8.

Plaintiff electronically signed a membership agreement, and that agreement was then e-mailed to him at the personal e-mail address he provided, "oldacres@live.com." *Id.* at ¶ 11, Exh. 1 to Hrinda Decl., e-mail dated November 10, 2021 ("Exh. 1"). The "Parties" to the agreement are "Planet Fitness" defined as "ECP-PF NY Operations West, LLC" and any "affiliates;" "parents;" or "subsidiaries" and Plaintiff. *See* p.1 (defining "Planet Fitness"). ECP-PF CT Operations is an affiliate of ECP-PF NY Operations West, LLC; both entities are subsidiaries of ECP-PF Holdings Group, Inc. Exh. 1 at ¶ 4.

The agreement contains, in paragraph 12, a broad arbitration clause and class action waiver, requiring employees to arbitrate any dispute they have with Planet Fitness in lieu of litigation. The arbitration clause provides:

> **12. Binding Individual Arbitration and Class Waiver**
> In the unlikely event that Planet Fitness and/or PF Corporate is unable to resolve a complaint you may have to your satisfaction (or is unable to resolve a dispute with you after attempting to do so informally), subject to your right to opt-out below, **you, Planet Fitness and/or PF Corporate each agree to resolve such disputes through binding arbitration or small claims court rather than a court of general jurisdiction**. Arbitration utilizes a neutral arbitrator instead of a judge or jury and the procedures are generally simpler and more limited than those applicable to a lawsuit in court. Arbitration is subject to limited review by courts, but an arbitrator can award the same damages and remedies that a court can award. *For the purposes of this arbitration provision, a "dispute" between us shall be broadly construed to mean any dispute, claim, or controversy between you and Planet Fitness* or PF Corporate, including any dispute, claim, or controversy arising from or relating to your membership, this agreement, your access to or use of a Planet Fitness club, or your access to and use of any Planet Fitness digital content, whether based in contract, tort, warranty, regulation, statute, or any other legal or equitable basis.

*Id.* at Exh. 2 (the "Agreement") (italics added) (bold in original). The class waiver is explicit:

11

> A) <u>Class Action Waiver</u>. To the fullest extent permitted by law, you, Planet Fitness and PF Corporate acknowledge and agree that you and we each are waiving the right to a trial by jury and the right to participate in a class action, either in court or in arbitration. This means that neither you, Planet Fitness or PF Corporate may join claims in arbitration with or against other members, or litigate in court or arbitrate any claims as a representative or member of a class and that the arbitrator may not consolidate any claims into a class proceeding. However, if this class action waiver is held unenforceable as to all or some parts of a dispute, to the extent that any claims must proceed on a class, consolidated, or representative basis, such claims must be litigated in the state or federal courts of the state in which your home club is located and not in arbitration, with any remaining parts proceeding in individual arbitration.

*Id.* at Exh. 2. The agreement has an exception for small claims, permitting the Plaintiff to bring an individual claim in small claims court if the dispute is within the jurisdiction of that court. *Id.* at ¶ 12(B).

The agreement provides that the Federal Arbitration Act shall govern and requires that Planet Fitness pay for all AAA filing, administration and arbitrator fees and expenses, subject to the arbitrator's right to reallocate in accordance with AAA Rules. *Id.* at ¶ 12(E). And the agreement provides that any issues relating to arbitrability, such as whether the agreement covers any particular dispute is to be decided by the arbitrator, not the Court:

> The arbitrator, and not any local, state, or federal court, shall have the exclusive authority to determine all issues regarding the interpretation, applicability, and enforcement of this agreement and all issues regarding the arbitrability of the dispute, including but not limited to any claim that all or part of the arbitration provision is void or voidable. *Id.* at ¶12(C).

Plaintiff had the right to "reject" the arbitration provision by sending a written opt-out notice to Planet Fitness within 30 days after he signed the agreement. *Id.* at ¶ 12(F). Plaintiff also had the ability to cancel the contract within three days after signing it. Hrinda Decl. ¶ 12. Plaintiff did not exercise the option to opt-out of the arbitration agreement or cancel the contract within the three-day grace period. *Id.* at ¶¶ 12, 14.

## ARGUMENT

### I. ARBITRATION OF THIS MATTER IS REQUIRED PURSUANT TO THE FAA

Congress enacted the FAA to dispel judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("Congress adopted the Arbitration Act in 1925 in response to a perception that courts were unduly hostile to arbitration"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic*, 138 S. Ct. at 1621; 9 U.S.C. § 3. The FAA, thus, reflects a "liberal federal policy favoring arbitration" so strong that "the Second Circuit has stated it is difficult to overstate the strong federal policy in favor of arbitration." *Randle v. Conduent Inc.*, 2020 U.S. Dist. LEXIS 68162 *5 (W.D.N.Y. Apr. 17, 2020) (internal quotations and citations omitted).

Section 3 of the FAA is the operative provision and requires that if a suit or proceeding is referable to arbitration under an arbitration agreement, the Court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). A court must stay proceedings if an arbitration agreement exists. *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 86 (2d Cir. 1994); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'") (quoting 9 U.S.C. § 3).

On a motion to compel arbitration pursuant to the FAA, the courts generally follow a two-part test, whereby they consider: (1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration

agreement. *Randle*, 2020 U.S. Dist. LEXIS 68162 at *6; *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 562-63 (S.D.N.Y. 2013).

### A. The Parties Agreed to Arbitrate.

"A valid arbitration agreement requires 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement[.]'" *Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) (quoting *Express Indus. & Terminal Corp. v. N.Y. State DOT*, 93 N.Y.2d 584, 589 (1999)). To determine whether the parties agreed to arbitrate, courts apply the ordinary state-law principles that govern the formation of contracts. *See Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019). The terms of an agreement, of course, provide the best evidence of what the parties intend, and a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. *Id.* By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement. *See Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) (holding that a party's signature generally creates a presumption that the party assented to the terms of the agreement). And under New York law, a party cannot generally avoid the effect of a contract on the ground that he or she did not read it or know its contents. *Randle*, 2020 U.S. Dist. LEXIS 68162 at *9-10; *Badinelli v. The Tuxedo Club*, 183 F. Supp. 3d 450, 456 (S.D.N.Y. 2016) ("Under generally accepted principles of contract law in New York, 'in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)) (internal quotation omitted). Similarly, under New York law, the failure to recall signing an arbitration agreement does not

14

absolve a party from his contractual obligations. *Leroy v. Amedisys Holding LLC*, 2022 U.S. Dist. LEXIS 23525 *14 (W.D.N.Y. Feb. 9, 2022).

Here, Plaintiff signed an arbitration agreement that requires arbitration of his claims.

**B.     Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.**

As to the second question, the *scope* of the arbitration agreement, any doubts are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "This presumption in favor of arbitrability comes from the FAA, which directs courts to abandon their hostility toward arbitration and instead respect and enforce agreements to arbitrate." *Abdullayeva*, 928 F.3d at 222 (citation and internal quotations omitted). "[C]ourts 'resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability' and thus 'will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Randle*, 2020 U.S. Dist. LEXIS 68162 at *12 (quoting *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)).

But issues regarding whether a particular dispute falls within the parties' agreement to arbitrate is not always a question for a court. The question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for the court unless "the parties clearly and unmistakably provide otherwise" and reserve that question for the court. *Beijing Shougang Mining Ins. Co. v. Mongolia*, 11 F.4th 144, 153 (2d Cir. 2021). "The concept of arbitrability includes questions such as whether the parties are bound by a given arbitration clause or whether an arbitration clause in concededly binding contract applies to a particular type of controversy. *Id.* (internal quotations omitted). And here the parties clearly and unmistakably, reserved that question for the arbitrator, providing that the "arbitrator, and not any local, state, or federal court, shall have the exclusive authority to determine all issues regarding the interpretation,

applicability, and enforcement of this agreement and all issues regarding the arbitrability of the dispute." Agreement ¶ 12(C).

Even if the Court were to resolve this issue, however, the agreement here is broad and the dispute falls withing the scope of the agreement.

To determine if a dispute falls within the scope of an arbitration agreement, a court should classify the particular clause as either broad or narrow. *Boss Worldwide LLC v. Crabill*, 2020 U.S. Dist. LEXIS 47462 *7 (S.D.N.Y. Mar. 16, 2020). "'Broad' clauses purport to refer all disputes to arbitration; 'narrow' clauses limit arbitration to specific types of disputes." *Camferdam v. Ernst & Young Int'l, Inc.*, 2004 U.S. Dist. LEXIS 9092 *5 (S.D.N.Y. May 19, 2004) (internal citation omitted). If the agreement is narrow, the Court must determine whether the issue is within the purview of the arbitration clause. *Id.* When "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Serebryakov v. Golden Touch Transp. of NY, Inc.*, 2015 U.S. Dist. LEXIS 36667 *6 (E.D.N.Y. Mar. 24, 2015) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).

Here, the arbitration agreement applies to any "dispute" and itself states that "dispute" "shall be broadly construed to mean ***any dispute***, claim or controversy between you and Planet Fitness." Agreement ¶ 12 (emphasis added). While the agreement states it *includes* disputes relating to Plaintiff's membership in the gym, the agreement is not limited to such disputes, but instead covers "any dispute." This type of "expansive language . . . suggest[s it is] a broad arbitration clause." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2000); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.

1998) ("Any dispute, controversy or claim arising under or in connection with th[e] Agreement" is a broad arbitration clause); *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) ("[A]ny dispute, controversy or claim arising out of or relating to this Agreement" is a broad arbitration clause.); *Vera v. Saks & Co.*, 218 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("Any dispute . . . arising out of or relating to this Agreement" found to be a broad arbitration clause) *aff'd*, 335 F.3d 109 (2d Cir. 2003); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 26 (2d Cir. 2002) ("[A]ny dispute [that] shall arise between the parties . . . with reference to the interpretation of this Agreement or their rights with respect to any transaction involved" held to be a broad arbitration clause). Thus, the dispute is covered by the scope of the agreement.

## II.   THE COURT SHOULD STAY THIS CASE PENDING THE OUTCOME OF PROCEEDINGS BEFORE THE ARBITRATOR

Because there is a valid and binding agreement to arbitrate between the parties, and Plaintiff's claims are all within its scope, Section 3 of the FAA requires issuance of a stay until arbitration has been had in accordance with the terms of the agreement. *See Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (explaining that the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested").

## CONCLUSION

For the foregoing reasons, this Court should: (1) compel Plaintiff to arbitrate his claims against Defendant; and (2) stay these proceedings until conclusion of the arbitration.

Dated: Melville, New York
September 16, 2022

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEY FOR DEFENDANT*
58 South Service Rd., Ste. 250
Melville, New York 11747

(631) 247-0404

By: _____
JEFFREY W. BRECHER, ESQ.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022 the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ECP-PF CT OPERATIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION** was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Western District's Local Rules and the Western District's Rules on Electronic Service upon the following parties and participants:

Andrew M. Debbins, Esq.
CONNORS LLP
*Attorneys for Plaintiff*
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
amd@connorsllp.com

s/ *Jeffrey W. Brecher*
JEFFREY W. BRECHER, ESQ.

4867-5918-4690, v. 1