UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER OLDACRE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>     v.<br><br>ECP-PF OPERATIONS, INC.,<br><br>                    Defendant. | Civil Action No. 1:22-cv-00577-JLS-HKS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND STAY THE ACTION**

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 2

ARGUMENT ................................................................................................................................. 2

I.     THIS ACTION FALLS OUTSIDE THE SCOPE OF THE GYM MEMBERSHIP'S ARBITRATION CLAUSE ................................................................. 3

II.    THIS ACTION IS COMPLETELY UNTETHERED TO PLAINTIFF'S GYM MEMBERSHIP, RENDERING THE ARBITRATION CLAUSE UNENFORCEABLE AND UNCONSCIONABLE ............................................................. 4

III.   PLAINTIFF'S GYM MEMBERSHIP AGREEMENT DOES NOT MANIFEST ASSENT TO ARBITRATE DISPUTES ARISING FROM HIS EMPLOYMENT AT PLANET FITNESS ................................................................... 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Barrows v. Brinker Restaurant Corp.*,
  36 F.4th 45 (2d Cir. 2022) .................................................................................................. 2

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
  990 F.3d 173 (2d Cir. 2021) ............................................................................................ 1, 6

*Dedon GmbH v. Janus et Cie*,
  411 F. App'x 361 (2d Cir. 2011) ........................................................................................ 6

*Esparza v. SmartPay Leasing, Inc.*,
  2017 WL 4390182 (N.D. Cal. Oct. 3, 2017) ...................................................................... 9

*Falberg v. Goldman Sachs Group*,
  2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ...................................................................... 6

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ........................................................................................................... 2

*Hearn v. Comcast Cable Communs., LLC*,
  415 F. Supp. 3d 1155 (N.D. Ga. 2019) .............................................................................. 5

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ............................................................................................................. 7

*In re Am. Express Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ............................................................................................... 7

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
  847 F. Supp. 2d 1253 (S.D. Cal. 2012) ........................................................................... 5, 7

*Jillian Mechanical Corp. v. United Serv. Workers Union Local 355*,
  882 F. Supp. 2d 358 (E.D.N.Y. 2012) ................................................................................ 2

*Jones v. Halliburton Co.*,
  583 F.3d 228 (5th Cir. 2009) .............................................................................................. 7

*Kay–R Elec. Corp. v. Stone & Webster Constr. Co.*,
  23 F.3d 55 (2d Cir.1994) .................................................................................................... 8

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
  67 F.3d 20 (2d Cir. 1995) ................................................................................................... 6

*Leonard v. Pepsico, Inc.*,
    88 F. Supp. 2d 116 (S.D.N.Y.1999) ................................................................................. 8

*McFarlane v. Altice USA, Inc.*,
    524 F. Supp. 3d 264 (S.D.N.Y. 2021) ................................................................... 4, 5, 6, 9

*Mey v. DIRECTV, LLC*,
    2021 WL 973454 (N.D. W. Va. Feb. 12, 2021) ................................................................ 9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................................ 3

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
    388 U.S. 395 (1967) .......................................................................................................... 2

*Revitch v. DIRECTV, LLC*,
    977 F.3d 713 (9th Cir. 2020) ............................................................................................ 5

*Savage v. Citibank N.A.*,
    2015 WL 2214229 (N.D. Cal. May 12, 2015) ................................................................ 10

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) .............................................................................................. 7

*Smith v. Steinkamp*,
    318 F.3d 775 (7th Cir. 2003) ......................................................................................... 4, 5

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019) .............................................................................................. 8

*Thomas v. Cricket Wireless, LLC*,
    2020 WL 7260532 (N.D. Cal. Dec. 10, 2020) .................................................................. 9

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017) ............................................................................................ 7

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ...................................................................................................... 2, 3

*Ward v. Cross Sound Ferry*,
    273 F.3d 520 (2d Cir. 2001) .............................................................................................. 8

*Wexler v. AT&T Corp.*,
    211 F. Supp. 3d 500 (E.D.N.Y. 2016) ................................................................... 1, 5, 8, 9

*Wuest v. Comcast Corp.*,
    2017 WL 6520754 (N.D. Cal. Oct. 5, 2017) ................................................................... 10

**STATUTES**

New York Labor Law ("NYLL") § 191 ........................................................................................ 1

**INTRODUCTION**

Defendant's motion to compel arbitration ("MTC") is not your ordinary employer's motion to compel an employee to arbitration. That is because Plaintiff, a former employee of Defendant, brings claims for untimely wage payments under New York Labor Law ("NYLL") § 191 related to his *employment*, yet Defendant seeks to enforce an arbitration clause located within a *gym membership*. Arbitration is not a condition of employment for Defendant. Rather, as set forth in the Hrinda Declaration (ECF No. 10), Plaintiff signed up for a gym membership with Defendant. *Id.* ¶¶ 8-9. But Plaintiff's claims have nothing to do with his gym membership.

Importantly, the arbitration clause within the gym membership states that it "shall be broadly construed to mean any dispute, claim, or controversy between you and Planet Fitness or PF Corporate, including any dispute, claim, controversy, arising from or relating to your membership, this agreement, your access to or use of a Planet Fitness club, or your access to an use of any Planet Fitness digital content[.]" ECF No. 10-2, at pp. 3 of 4. However, where a defendant seeks to enforce arbitration of claims that are unrelated to the subject matter of the arbitration agreement, courts have routinely held such "infinite arbitration clauses" are unenforceable. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (finding claims did not fall within scope of arbitration clause where "none of the facts relevant to the merits of Cooper's claims against Ruane relates to his employment"); *see also infra* § I.B (collecting cases). Here, Plaintiff's claim that Defendant violated New York Labor Law ("NYLL") § 191 by paying him and class members on an untimely basis are unrelated to the contract he signed for his gym membership. Defendant does not dispute this.

For similar reasons, under these circumstances, courts have also held such clauses are unenforceable because there was no mutual assent for Plaintiff's claims to be subject to arbitration. *See infra* § I.C; *see also Wexler v. AT&T Corp.,* 211 F. Supp. 3d 500, 504-05 (E.D.N.Y. 2016) ("a

1

reasonable person would be expressing, at most, an intent to agree to arbitrate disputes connected in some way to the service agreement").

For the reasons detailed herein, Defendant's motion should be denied accordingly.

## **LEGAL STANDARD**

"On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists." *Jillian Mechanical Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012). "This Court must first determine whether there is a valid agreement to arbitrate between the parties." *Id.* "If there is, the Court must then determine whether the particular dispute falls within the scope of arbitration clause." *Id.* "Because motions to compel arbitration are governed by a standard similar to that applicable for a motion for summary judgment, [the] [C]ourt must draw all reasonable inferences in favor of the non-moving party." *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (internal quotations omitted). "Arbitration is strictly a matter of consent, and thus is a way to resolve … *only those disputes* … the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, n.12 (1967) (emphasis added).

## **ARGUMENT**

While Defendant cites authorities emphasizing a strong policy favoring arbitration, the Supreme Court has repeatedly made clear that the Federal Arbitration Act ("FAA") was designed "to make arbitration agreements as enforceable as other contracts, *but not more so*." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (emphasis

added) (citation omitted). "Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so." *Id.*

"Courts deciding motions to compel . . . draw[] all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).

I.   **THIS ACTION FALLS OUTSIDE THE SCOPE OF THE GYM MEMBERSHIP'S ARBITRATION CLAUSE**

Defendant's motion should be denied for the simple reason that, by its plain terms, its arbitration clause does not cover employment disputes. This is hardly surprising, given that the arbitration clause is located in fine print at the bottom of a gym membership. It has nothing to do with employment. Specifically, the arbitration clause states:

> For purposes of this arbitration provision, a "dispute" between us shall be broadly construed to mean any dispute, claim, or controversy between you and Planet Fitness or PF Corporate, including any dispute, claim, or controversy arising from or relating to your membership, this agreement, your access or use of a Planet Fitness club, or your access to and use of any Planet Fitness digital content, whether based in contract, tort, warranty, regulation, statute of any other legal or equitable basis.

*See* Hrinda Decl., Ex. 2 (ECF No. 10-2, at pp. 4 of 5).

With scarce analysis, Defendant asserts simply that Plaintiff's claims fall within the scope of the arbitration agreement because "the agreement here is broad" and because it purports to cover "any dispute." MTC at 16. But that is wrong. Plaintiff's claim for untimely wages does not arise from or relate to his gym membership, his gym membership agreement, his access or use of Planet Fitness gyms, nor his access or use of any Planet Fitness digital content. Against this backdrop, Defendant's argument fails.

3

## II. THIS ACTION IS COMPLETELY UNTETHERED TO PLAINTIFF'S GYM MEMBERSHIP, RENDERING THE ARBITRATION CLAUSE UNENFORCEABLE AND UNCONSCIONABLE

Even if the arbitration clause in Plaintiff's gym membership were construed broadly enough to cover literally any dispute between himself and Defendant, when applied in a matter unrelated to the underlying contract, it constitutes an "infinite arbitration clause" which is unenforceable and unconscionable under New York law.

The decision in *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264 (S.D.N.Y. 2021) is squarely on point. *McFarlane* was a putative class action involving "former employees of Altice or its subsidiaries" who brought suit after they received a data breach notification from Altice, a cable company. *Id.* at 269. Most of the named plaintiffs were "current or former cable subscribers through Altice or one of its subsidiaries." *Id.* at 270. Altice moved to compel those plaintiffs' claims to arbitration. *Id.* at 273. As is the case here, the *McFarlane* court noted "[s]ignificantly, Altice does not [seek to compel arbitration] based on an arbitration provision contained in any employment agreements with these Plaintiffs, but based on arbitration provisions contained in the [Terms and Conditions] pertaining to the company's *cable* service." *Id.* (emphasis in original). The *McFarlane* court also noted the arbitration clause at issue was not "limited to claims 'arising out of' or 'relating to' the cable service agreement. Instead, it purports to cover 'any and all disputes arising between' the customer and Altice[.]" *Id.* at 275.

In determining whether the plaintiffs' claims were subject to arbitration, the *McFarlane* court began by noting the "relative novelty" of "infinite arbitration clauses" such as the one at hand, but acknowledged the case law to address them so far "has taken a jaundiced view of the argument that they should be enforced according to their terms." *Id.* at 275. The *McFarlane* court credited Judge Posner's decision in *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003) as the origin for courts declining to enforce arbitration clauses under circumstances like these, wherein "Judge

4

Posner described the 'absurd results' that would 'ensue' if a payday lender's arbitration agreement purporting to cover 'all claims asserted by you… against us' were 'read standing free from any loan agreement.'" *McFarlane*, 524 F. Supp. 3d at 275 (citing *Smith*, 318 F.3d at 776-77).

"Following *Smith*, the Ninth Circuit and a handful of district courts around the country have declined to compel arbitration of claims based on 'infinite arbitration clauses' where the claims at issue lack any nexus whatsoever to the agreement containing the clause." *McFarlane*, 524 F. Supp. 3d at 276 (citing *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717-21 (9th Cir. 2020); *Hearn v. Comcast Cable Communs., LLC*, 415 F. Supp. 3d 1155 (N.D. Ga. 2019); *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 503-05 (E.D.N.Y. 2016); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012)).

Ultimately, the *McFarlane* court explained that "under New York law, the Arbitration Provision cannot be applied to claims lacking a nexus to the Altice cable service agreement." *McFarlane*, 524 F. Supp. 3d at 277. This ruling was based on two separate reasons:

> Applying these principles here, the Court reaches the same conclusion that the *Hearn*, *Revitch*, and *Wexler* Courts reached: "Notwithstanding the literal meaning of the clause's language, **no reasonable person would think that**" agreeing to Altice's Terms and Conditions "**would obligate them to arbitrate literally every possible dispute he or she might have with the service provider**, let alone all of [its] affiliates ... — including those who provide services unrelated to [cable television]. **Rather, a reasonable person would be expressing, at most, an intent to agree to arbitrate disputes connected in some way to the service agreement with [Altice].**" *Wexler*, 211 F. Supp. 3d at 504.
>
> In the alternative, and for similar reasons, the Court concludes that **it would be unconscionable to enforce the Arbitration Provision with respect to claims untethered to the Altice cable service agreement**.

*Id.* at 277; *see also id.* at 277-78 ("To enforce the Arbitration Provision 'according to its literal terms' would cross this line [of unconscionability]. Indeed, it takes little imagination to come up

5

with hypotheticals that make plain the outrageous results that would follow were that not the case. … The list compels the Court to conclude that, as a matter of general unconscionability doctrine, the Arbitration Provision must be construed to apply only to claims that have some nexus to the contract of which it is part.").

The analysis in *McFarlane* applies with equal force here.  Plaintiff's claims regarding his employment for Defendant have nothing to do with his gym membership.  Accordingly, under New York law, the arbitration clause is both unenforceable and unconscionable.  Defendant's motion should therefore be denied.  *See McFarlane*, 524 F. Supp. 3d at 279 ("In short, whether as a matter of contract formation or unconscionability, the Court holds that the Arbitration Provision does not apply to Plaintiffs' claims to the extent that they lack any nexus to the cable service agreement — that is, to the extent that they are not brought by Plaintiffs in their capacities as current or former Altice *subscribers.*") (emphasis in original); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (finding claims did not fall within scope of arbitration clause where "none of the facts relevant to the merits of Cooper's claims against Ruane relates to his employment"); *Dedon GmbH v. Janus et Cie*, 411 F. App'x 361, 364 (2d Cir. 2011) ("Janus would thus have this court find that '*any* dispute related to *any* obligation arising prior to or outside of the contract formed by each shipment of goods' is governed by the purchase orders' terms and conditions.  …  We decline to adopt Janus's broad reading of that contractual language, as it ignores the plain language of the purchase order.") (emphasis in original); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (defamation case was outside the scope of arbitration agreement, even though the agreement covered "any controversy or claim arising under or relating to the contract," because it involved allegations of dishonesty and incompetence by the defendant, whereas the agreement was part of a finishing contract); *Falberg*

6

*v. Goldman Sachs Group*, 2022 WL 538146, at *31–32 (S.D.N.Y. Feb. 14, 2022) (holding "that plaintiff had signed an arbitration agreement with his employer did not foreclose him from bringing an ERISA action on behalf of the plan" and further noting that "courts in this district have found infinite arbitration clauses to be invalid."); *see also United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017) (where "this FCA suit has no direct connection with Welch's employment because even if Welch had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the government") (internal quotations omitted) (citing *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009)); *In re Jiffy Lube*, 847 F. Supp. 2d at 1262-63 (declining to enforce arbitration clause that "purports to apply to 'any and all disputes' between Jiffy Lube and [plaintiff], and was "not limited to disputes arising from or related to the transaction or contract at issue.").[1]

### III. PLAINTIFF'S GYM MEMBERSHIP AGREEMENT DOES NOT MANIFEST ASSENT TO ARBITRATE DISPUTES ARISING FROM HIS EMPLOYMENT AT PLANET FITNESS

A key question when considering a motion to compel is "whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012); *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002)). Here, even if the Court were to conclude that this dispute falls within the scope of the arbitration provision, Defendant has failed to show that Plaintiffs agreed to arbitrate such claims.

---

[1] Defendant's proffered authority holding that similar language has been held by courts to be "broad" is of no import. As Plaintiff has shown, the Second Circuit and district courts have routinely held that similar "broad" arbitration clauses can still be inapplicable where, like here, the arbitration clause bears no nexus to the claims asserted.

7

"[T]o be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (citations omitted). "The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* at 289. Indeed, the party must be "meaningfully informed of the contractual terms at stake." *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001).

Here, Defendant claims that the parties agreed to arbitrate simply because "Plaintiff signed an arbitration agreement that requires arbitration of his claims." MTC at 14. That is wrong. The case of *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) is particularly instructive because it applied Second Circuit law to an arbitration clause in a similar scenario. In *Wexler*, the plaintiff's cell phone service agreement included a broad arbitration clause that applied to the defendant and its affiliates and required arbitration of "all disputes and claims between [them]." *Id.* at 501. The plaintiff sued the defendant for violations of the Telephone Consumer Protection Act due to unsolicited text message advertisements for television and internet service that the plaintiff received from one of the defendant's subsidiaries after the expiration of her cell phone contract. *Id.* at 502. The court declined to compel arbitration of the plaintiff's claims, finding both that the arbitration clause was "unlimited in scope" and that the plaintiff's claim was wholly unrelated to her cell phone service. *Id.* at 504-05. The court held:

> But the words expressed [in the agreement] must be judged according to "what an objective, reasonable person would have understood [them] to convey." *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 127 (S.D.N.Y.1999) (citing *Kay–R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 57 (2d Cir.1994)). Notwithstanding the literal meaning of the clause's language, **no reasonable person would think that checking a box accepting the "terms and conditions" necessary to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or she might have with the service provider**, let alone

8

> all of the affiliates under AT & T Inc.'s corporate umbrella—
> including those who provide services unrelated to cell phone
> coverage. **Rather, a reasonable person would be expressing, at
> most, an intent to agree to arbitrate disputes connected in some
> way to the service agreement with Mobility**. As explained above,
> Wexler's claims are not so connected. If a company wishes to bind
> its customers to something broader, it must take steps to secure
> something that a reasonable person would understand as an
> objective expression of his or her agreement.

*Id.* at 504-05 (emphasis added).

As in *Wexler*, "no reasonable person would think" that signing up for a gym membership would obligate them to arbitrate claims wholly unrelated to the gym membership but instead arising from their employment. *See also McFarlane*, 524 F. Supp. 3d at 277 ("no reasonable person would think that" agreeing to Altice's Terms and Conditions would obligate them to arbitrate literally every possible dispute he or she might have with the service provider"); *Mey v. DIRECTV, LLC*, 2021 WL 973454, at *8-9 (N.D. W. Va. Feb. 12, 2021) (denying motion to compel arbitration, holding that "[c]ustomers, having been informed that the contract contains an arbitration clause, would rationally expect that the agreement required the arbitration of any issues related to that contract. … If Wexler were hit by a Mobility delivery van, or if she tripped over a dangerous condition in a Mobility store, her tort claim would have to go to arbitration. If she bought shares of stock in Mobility and later claimed a decrease in share price was the result of corporate malfeasance, her securities-fraud claim would have to go to arbitration."); *Esparza v. SmartPay Leasing, Inc.*, 2017 WL 4390182, at *3 (N.D. Cal. Oct. 3, 2017), *aff'd*, 765 F. App'x 218 (9th Cir. 2019) ("reading the clause as applying to any and every claim arising between SmartPay and its customers, even including employment and tort claims, with no limiting principle would render the clause impermissibly overbroad, and therefore inoperable."); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7260532 (N.D. Cal. Dec. 10, 2020), *appeal dismissed sub*

9

*nom. Waters v. Cricket Wireless, LLC*, 2021 WL 6495034 (9th Cir. July 30, 2021) (noting the court was "not aware of any controlling authorities allowing for arbitration of claims, like here, that are wholly divorced from the underlying service contract."); *Savage v. Citibank N.A.*, 2015 WL 2214229, at *3 (N.D. Cal. May 12, 2015) ("Here, there is no basis for concluding that in accepting the Sears card agreements, Plaintiff consented to arbitrate all claims that could ever arise between him and Citi. … That is an absurd consequence."); *Wuest v. Comcast Corp.*, 2017 WL 6520754, at *3 (N.D. Cal. Oct. 5, 2017) ("the arbitration clause must extend only to claims that 'arise out or relate to' the contract the Plaintiff signed").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to compel arbitration in its entirety.

Dated: October 14, 2022

Respectfully submitted,

By:     */s/ Yitzchak Kopel*
          Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
           aleslie@bursor.com

**CONNORS LLP**
Andrew M. Debbins
1000 Liberty Building
Buffalo, NY 14202
(716) 852-5533
amd@connorsllp.com

*Attorneys for Plaintiff*