UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CHRISTOPHER OLDACRE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ECP-PF CT OPERATIONS, INC.,

Defendant.

Civil Case No.: 22-cv-00577(JLS)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**

JACKSON LEWIS P.C.
*ATTORNEY FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
*Jeffrey W. Brecher, Esq.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................iii

PRELIMINARY STATEMENT....................1

ARGUMENT....................1

POINT I. The Arbitrator, Not the Court, Must Resolve Plaintiff's Challenges to the Scope of the Arbitration Clause Because the Parties Expressly Delegated that Function to the Arbitrator....................1

POINT II. Plaintiff's Claim Falls Within the Scope of the Arbitration Agreement....................3

POINT III. The FAA Requires Courts to Enforce Arbitration Agreements According to Their Terms....................4

CONCLUSION....................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angeles v. Buy Buy Baby, Inc.*,
22-CV-01002 (E.D.N.Y. 2022) .................... 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................... 5, 6, 7

*Bloate v. United States*,
559 U.S. 196 (2010) .................... 3

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021).................... 9

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F. 4th 308 (2d Cir. 2021).................... 2, 3, 4

*Dedon GmbH v. Janus et Cir.*,
411 Fed. Appx 361 (2d Cir. 2011) .................... 9

*Epic Sys. Corp. v Lewis*,
138 S. Ct. 1612 (2018) .................... 1

*Esparza v. SmartPay Leasing, Inc.*,
765 Fed. Appx. 218 (9th Cir. 2019) .................... 9

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
314 U.S. 95 (1941) .................... 3

*Gillman v. Chase Manhattan Bank*,
73 N.Y.2d 1 (1988).................... 6, 7

*Green v. Leslie's Poolmart Inc.*,
22-CV-3683 (E.D.N.Y. 2022) .................... 7

*Hearn v. Comcast Cable Comms., LLC*,
415 F. Supp. 3d 1155 (N.D. Ga. 2019) .................... 10

*Henry Schein, Inc., v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .................... 1, 2

*Huy v. AMC Entertainment Holdings Inc.*,
22-CV-3183 (S.D.N.Y. 2022) .................... 7

*In Re Jiffy Lube Int'l, Inc.*,
847 F. Supp. 2d 1253 (S.D. Cal. 2012) .................... 6

*Lamps Plus, Inc., v. Varela*,
139 S. Ct. 1407 (2019) .......... 3, 5, 7, 8

*Leadertex v. Morganton Dyeying & Finishing Corp.*,
67 F.3d 20 (2d Cir. 1995) .......... 9, 10

*Lopez v. Tailored Brands, Inc.*,
22-CV-2073 (E.D.N.Y. 2022) .......... 7

*McFarlane v. Altice USA, Inc.*,
524 F. Supp. 3d 264 (S.D.N.Y. 2021) .......... 8

*Metro Life Ins., Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019) .......... 2

*Mey v. DirectTV, LLC*,
971 F.3d 284 (4th Cir. 2020) .......... 4, 6, 9

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022) .......... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 9, 10

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998) .......... 3, 4

*Ramos, et al. v. Apple Inc.*,
7:22-cv-02761 (S.D.N.Y. 2022) .......... 7

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 2

*Revitch v. DirectTV, LLC*,
977 F.3d 713 .......... 8, 9

*Smith v. Steinkamp*,
318 F.3d 775 (7th Cir. 2003) .......... 8, 9

*Tristant v. Blue Bottle Coffee LLC*,
22-CV-3184 (S.D.N.Y. 2022) .......... 7

*Viking River Cruises, Inc., v. Moriana*,
142 S. Ct. 1906 (2022) .......... 5, 6

*United States ex rel. Welch v. My Left Foot Children's Therapy*, *LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 4, 5

*Wexler v. AT&T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) .......... 9, 10

**Statutes**

Federal Arbitration Act........................................................................................................................................*passim*

## PRELMINARY STATEMENT

The Federal Arbitration Act (FAA) requires courts "'rigorously' to 'enforce arbitration agreements according to their terms.'" *Epic Sys. Corp. v Lewis*, 138 S. Ct. 1612, 1621 (2018). Plaintiff asks the Court to ignore this directive and instead of "rigorously" enforcing the terms of the agreement, refuse to enforce them. Plaintiff's first argument is that the agreement to arbitrate is *narrow* and does not cover the dispute here. *See* Plfs. Br. p. 3. But the agreement is broad and applies to "all disputes," and clearly covers the claim here. Hedging his bet, Plaintiff next argues (inconsistent with the first argument), that the agreement should not be enforced for the opposite reason—that it is too *broad*. *See* Plfs. Br. pp. 4-7 (arguing the agreement contains an "infinite" arbitration clause). But Plaintiff's opposition skips an initial threshold issue: *who* determines whether the scope of the arbitration agreement covers the parties' dispute, the arbitrator, or the Court? This threshold question, as noted in our moving brief (*see* Def. Br. p. 15), resolves the motion here, as the parties delegated that authority to the arbitrator, not the Court. And under the FAA and Supreme Court precedent, the Court may not override this agreement and must compel arbitration and permit the arbitrator to resolve any disputes regarding arbitrability. But even if the Court were to address the issue of arbitrability, the agreement is enforceable. It is broadly written to cover the claim here and the agreement has a nexus to Plaintiff's employment—the complimentary gym membership containing the agreement to arbitrate was given to him because he was an employee. Regardless, the Court is not free to ignore the terms of the agreement even if it contains a so-called "infinite arbitration clause."

## ARGUMENT

### I. The Arbitrator, Not the Court, Must Resolve Plaintiff's Challenges to the Scope of the Arbitration Clause Because the Parties Expressly Delegated that Function to the Arbitrator

It is well settled that the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc., v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). And "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id*. at 531. "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" because "an agreement to arbitrate gateway

issues is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *DDK Hotels, LLC v. Williams-Sonoma, Inc*., 6 F. 4th 308, 316 (2d Cir. 2021) ("Just as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract.") (quoting *Metro Life Ins., Co. v. Bucsek*, 919 F.3d 184, 189-90 (2d Cir. 2019). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc*., 139 S. Ct. at 529. "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

The party seeking to compel arbitration of arbitrability bears the burden of establishing, by clear and unmistakable expression, the parties' intent to submit arbitrability disputes to arbitration. *DDK Hotels, LLC*, 6 F. 4th at 317; *Metro Life Ins.*, 919 F.3d at 191. Here, the parties' agreement clearly and unmistakably delegates the authority to decide issues of arbitrability to an arbitrator and not the Court:

> The arbitrator, and not any local, state, or federal court, shall have the exclusive authority to determine all issues regarding the interpretation, applicability, and enforcement of this agreement and all issues regarding the arbitrability of the dispute, including but not limited to any claim that all or part of the arbitration provision is void or voidable. Hrinda Dec. Exh. 2, at ¶ 12(C).

The delegation provision is nearly identical to the delegation clause the Supreme Court enforced in *Rent-A-Ctr*. *See* 561 U.S. at 68. Plaintiff has not challenged the enforceability of the delegation provision. Indeed, Plaintiff's opposition fails to rebut, or otherwise address in any way, Defendant's argument that the arbitrator must decide any challenge to the scope of the arbitration agreement. Thus, Defendant's argument is uncontested, and the Court here should grant its motion on this ground alone.

## II. Plaintiff's Claim Falls Within the Scope of the Arbitration Agreement

Even if the Court, and not the arbitrator, were to resolve the issue of whether the arbitration agreement applies to the dispute here, the arbitration agreement is not, as Plaintiff argues, narrow and limited to claims arising from the gym membership. The arbitration clause is broad. It applies to "any dispute" between the parties.

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (describing an arbitration agreement covering "[a]ny dispute, controversy or claim arising under or in connection with th[e] Agreement" as a broad arbitration clause); *see also* Def. Br. pp. 16-17 (collecting cases). While Plaintiff argues the agreement is limited only to disputes, claims or controversies arising from or relating to the gym membership, the plain text of the arbitration clause shows this is not true. The agreement covers "any dispute" and identifies claims arising out of the gym membership as just one *type* of claim that would be included within that broad scope:

> For purposes of this arbitration provision, a "dispute" between us shall be broadly construed to mean ***any dispute***, claim or controversy between you and Planet Fitness or PF Corporate, ***including*** any dispute, claim or controversy arising from or relating to your membership, this agreement, your access or use of a Planet Fitness club, or your access to and use of any Planet Fitness digital content, whether based in contract, tort, warranty, regulations, statute, or any other legal or equitable basis.

*Id*. (emphasis added). The term "including" means the example is illustrative, not exclusive. *See Bloate v. United States*, 559 U.S. 196, 208 (2010) (construing statutory phrase "including but not limited to" to introduce "list of categories" as "illustrative rather than exhaustive"); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co*., 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). Even if the language were vague (which it is not) "where the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *DDK Hotels, LLC*, 6 F. 4th at 317 (internal quotations omitted).

**III. The FAA Requires Courts to Enforce Arbitration Agreements According to Their Terms**

"The FAA requires courts to enforce arbitration agreements according to their terms." *Lamps Plus, Inc., v. Varela*, 139 S. Ct. 1407, 1415 (2019). "Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve the disputes." *Id*. "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id*.

Relying on a law review article by Professor Horton and a handful of cases from California that have adopted Professor Horton's view, some courts have sought to avoid so-called "infinite arbitration" clauses using some legal gymnastics. Courts have either done so by concluding the dispute at issue is not within the "scope" of

the arbitration agreement because the parties could not have intended it to apply so broadly or by holding that such clauses are "unconscionable." But Supreme Court precedent forecloses each of these paths. As to "scope," the Supreme Court has repeatedly explained that "where the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *DDK Hotels, LLC*, 6 F. 4th at 317. And a broad arbitration clause, like the one here, "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is *not* susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd*, 134 F.3d at 76. There is no dispute here that the parties entered into *an agreement* to arbitrate; the dispute is whether the scope of the arbitration agreement covers the claim here. And the language of the agreement and Supreme Court precedent answer that question affirmatively.

The Fourth Circuit in *Mey v. DirectTV, LLC*, 971 F.3d 284 (4th Cir. 2020) rejected similar arguments Plaintiff makes here. In *Mey* for example, the plaintiff brought a putative class action against DirectTV under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, alleging DirectTV called her cell phone to advertise products even though her number was on the national do not call registry. Several years prior, however, she executed an arbitration agreement with AT&T when she purchased a cellular phone. The agreement covered AT&T as well as its affiliates (DirectTV later became an affiliate). And as here, the arbitration agreement was broad covering "all disputes and claims between us." The district court denied the motion to compel adopting the same theory that Plaintiff advances here—that because the dispute was unrelated to the arbitration agreement, the arbitration agreement in the cell phone agreement did not cover a dispute relating to DirectTV's solicitation. The Fourth Circuit rejected that reasoning as inconsistent with Supreme Court precedent and held the court must enforce the terms of the arbitration agreement as written, and because the terms of the arbitration clause were broad, the dispute was covered. *Id*. at 292-295.

Although relied on by Plaintiff, *United States ex rel. Welch v. My Left Foot Children's Therapy*, *LLC*, 871 F.3d 791 (9th Cir. 2017) supports Defendant's position here. In *Welch*, the plaintiff was a former employee of the defendant who filed a False Claims Act (FCA), which permits any individual to file a civil action on behalf of the government (a qui tam action where the plaintiff stands in the shoes of the government). The defendant

moved to compel arbitration because the plaintiff signed an arbitration agreement during her employment. Because the arbitration agreement only applied to disputes that "may arise out of the employment context" or claims that the plaintiff had against the employer or vice versa that were related to or in connection with her employment, the court held the agreement did not apply to the FCA action because the FCA had no direct connection with the plaintiff's employment. But critically, the court explained its holding hinged on the limitations in the text of the agreement and acknowledged that if the parties had instead used broader language, applying the agreement, like here, to "all disputes," the result would have been different:

> [H]ad the parties wished to arbitrate every dispute encompassed in the "Included Claims" section it could have left the scope of the "Agreement" section at "any and all disputes whatsoever." Instead, every provision in the "Agreement" section containing an agreement to arbitrate is followed by some plain language imposing a textual limitation that, to be arbitrable, the dispute must arise from, relate to, or be connected with Welch's employment or association with MLF. Having chosen to include that language, we are bound to define the scope of this agreement by those limitations under two cardinal rules of textual interpretation.

*Id*. at 797.

The second path used by courts to side-step the clear terms of the arbitration agreement—"unconscionability"—is also foreclosed by Supreme Court precedent and New York law. The Supreme Court has explained the FAA creates "an equal-treatment principle" for arbitration agreements—*i.e.*, "a court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises, Inc., v. Moriana*, 142 S. Ct. 1906, 1917 (2022) (internal quotations omitted). Courts cannot devise "custom-made rules[] to tilt the playing field in favor of (or against) arbitration" or "devise novel rules" in favor (or against) arbitration. *Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022). Rather, "a court must hold a party to its arbitration contract just as the court would to any other kind." *Id*. And state contract law principles are preempted if they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA. *Lamps Plus v. Varela*, 139 S. Ct. at 1415; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (class action waiver in arbitration agreement valid contrary to state law barring such agreements as unconscionable).

This is precisely what Plaintiff seeks to have the Court do—apply unconscionability in a way that singles out arbitration agreements, reflecting the very "judicial hostility to arbitration" that the FAA was enacted to combat. *Viking River Cruises*, 142 S. Ct. at 1917. Even Professor Horton acknowledges that invalidating such clauses is on shaky ground and at odds with Supreme Court precedent. *See* David Horton, *Infinite Arbitration Clauses*, 168 Univ. Pa. L. Rev. 633, 642, 662 (2020) (acknowledging that courts' "jaundiced view of infinite clauses is hard to square with the Court's recent FAA decisions" because "these opinions admonish lower courts to 'rigorously enforce arbitration agreements according to their terms' and to ignore any rule that 'discriminates on its face against arbitration.'"). Professor Horton also concedes that some cases cited by Plaintiff are no longer good law in light of Supreme Court precedent: "As the Justices expanded the degree to which the FAA preempts state law, they may have implicitly overruled the lower court cases that refused to enforce infinite language."[1]

If the Court applies New York state law regarding unconscionability neutrally, and not tilted in a way that disfavors arbitration, Plaintiff cannot show the agreement to simply arbitrate his claim, rather than proceed in court, is unconscionable under New York law. Under New York law, an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988). A determination of unconscionability generally requires a showing that the contract was *both* procedurally and substantively unconscionable when made—*i.e.*, "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id*. (internal quotations omitted). "The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *Id*. at 11. Whether a contract is substantively unconscionable, in turn, "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id*. Only in "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on

---

[1] Plaintiff, for example, cites *In Re Jiffy Lube Int'l, Inc*., 847 F. Supp. 2d 1253 (S.D. Cal. 2012), but Professor Horton explained that the Supreme Court's decisions in *Concepcion* and *DirectTV* "imperil decisions [like *Jiffy Lube*] that refused to enforce infinite language" and that it (and other courts following it) "draws the very inference that *Concepcion* prohibits: that there is something inherently troubling about private dispute resolution. *Infinite Arbitration Clauses*, at 665-66.

the ground of substantive unconscionability alone" will the court hold it unconscionable absent both procedural and substantive unconscionability. *Id*. at 12.

Plaintiff has alleged no procedural unconscionability, nor could he. The membership agreement allowed him to *cancel* the entire contract within three days of signing it; it permitted him to *opt-out* of the arbitration provision; and it provided him with 30 days to do so, which he declined to do. *See* Hrinda Dec. Exh. 2, ¶ 12(f). Nor does the agreement even preclude him from bringing in court the very claim he seeks to bring in court here. The agreement expressly allows for him to bring claims in small claims court if the action is within the jurisdiction of that court, and here it is.[2] So, if he wishes to bring his claim in court, he is free to do so. He and his counsel, just cannot bring it as a class action—which is *really* what is at issue here.[3]

The arbitration agreement is also not substantively unconscionable under New York law. There is nothing unconscionable about arbitrating claims under a mutual agreement before the AAA. Thousands of court decisions have compelled parties to arbitrate under the FAA and the Supreme Court has identified many benefits of arbitration: "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Lamps Plus, Inc. v Varela*, 139 S. Ct. at 1416. The agreement is also substantively fair—it requires the Defendant pay for all the costs of the arbitration and fees, it provides for procedural fairness, incorporating AAA rules, and it authorizes the arbitrator to issue an award for all remedies authorized by law (excluding class claims). These provisions establish the absence of any substantive unconscionability. In *McFarlane v. Altice USA, Inc.,* 524 F. Supp. 3d 264 (S.D.N.Y. 2021), heavily relied on by Plaintiff, the court did not conduct any analysis of procedural or substantive unconscionability under New York law, necessary to invalidate a contract. Instead, the court did precisely what Supreme Court precedent prohibits—used state law

---

[2] Plaintiff only worked for Defendant for three months and during that time earned $2,182.32 in wages. His damages, according to Plaintiff's theory, is one-half that amount ($1,091). Thus, the alleged damages fall within the jurisdiction of the small claims court and Plaintiff could have pursued the claim there. Court access, of course, is not what he and his counsel want; they want the ability to bring a class action. But there is no substantive right to bring a class action. *See AT&T v. Concepcion*, 563 U.S. at 344.

[3] Plaintiffs' counsel here has filed more than 20 class action lawsuits alleging violations of NYLL § 191 frequency of pay provisions seeking millions of dollars in damages. *See, e.g.*, *Ramos, et al. v. Apple Inc.*, 7:22-cv-02761-NSR (S.D.N.Y. 2022); *Angeles v. Buy Buy Baby, Inc*., 22-CV-01002 (E.D.N.Y. 2022); *Green v. Leslie's Poolmart Inc.*, 22-CV-3683 (E.D.N.Y. 2022); *Huy v. AMC Entertainment Holdings Inc.*, 22-CV-3183 (S.D.N.Y. 2022); *Tristant v. Blue Bottle Coffee LLC*, 22-CV-3184 (S.D.N.Y. 2022); *Lopez v. Tailored Brands, Inc.*, 22-CV-2073 (E.D.N.Y. 2022).

principles to discriminate against an arbitration agreement, reflecting the very judicial hostility against arbitration that the FAA was enacted to combat.

Even if, as Plaintiff argues, the arbitration agreement "must be construed to apply only to the claims that have some nexus to the contract of which it is apart," a "nexus" exists here. Here, unlike in all the cases cited by Plaintiff, including *McFarlane*, the arbitration agreement is not untethered to Plaintiff's employment. Plaintiff was offered free "Black Card" membership in the gym (allowing him to use any Planet Fitness gym nationwide free of charge) *because* he was an employee. *See* Hrinda Dec. ¶ 7. It was a perk offered to employees upon hire. *Id*. In *McFarlane*, in contrast, the agreement to arbitrate was in a "General Terms and Conditions of Service" as part of a work order signed by the plaintiffs when cable was installed at their homes, years before or after they became employees. It had no relation to their employment. Here, the membership and agreement are *tied to,* not untethered from, Plaintiff's employment. The arbitration agreement thus has the requisite nexus to his employment, even if such a nexus were required, which it is not.

The facts here are also distinguishable from the other cases cited by Plaintiff because, in those cases, the dispute (or party to the dispute) had no relation to the contract or transaction resulting in the execution of the agreement to arbitrate. In *Revitch v. DirectTV, LLC*, 977 F.3d 713, for example, the plaintiff filed a claim against DirectTV under the TCPA but the plaintiff was not a customer of DirectTV and did not sign any agreement with DirectTV, let alone an arbitration agreement.[4] Those facts are worlds apart from the facts here. Plaintiff here brings a claim against Planet Fitness, the very same entity who is party to the arbitration agreement. And unlike in *Revitch*, where the claim was wholly unrelated to the transaction resulting in the formation of the arbitration agreement, here the "transaction" leading to the execution of the arbitration agreement is Plaintiff's employment—the gym membership (and the membership agreement) was given to Plaintiff *because* of Plaintiff's

---

[4] Notably, the court explained that if the arbitration agreement with AT&T had been clearer and stated it applied to "any affiliates, both present and future," that would present a different question, and "we might arrive at a different conclusion." *Id*. at 718. In *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003), also cited by Plaintiff, while the court theorized about potential issues with an arbitration agreement that covers claims unrelated to the underlying contract, ultimately, the court affirmed the denial of a motion to compel arbitration on narrower grounds: that "the waiver agreement, read sensibly and as a whole, with careful attention to the relation among the clauses, does not apply to future disputes . . . that is enough to defeat the appeals." *Id*. at 778. This decision, also, predated much of the Supreme Court jurisprudence instructing lower courts to enforce arbitration agreements according to their terms and that the FAA preempts state law that disfavors arbitration.

employment. The employment claim Plaintiff brings, therefore, is not unrelated to the underlying "transaction" leading to the signing of the agreement.[5]

The other cases Plaintiff cites are either inapposite or inconsistent with Supreme Court precedent. Several involve claims where the arbitration clause was narrow, not broad, like here. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc*., 990 F.3d 173 (2d Cir. 2021) (arbitration clause that was limited to claims arising out of or relating to employment (not "all disputes"); *Dedon GmbH v. Janus et Cir.*, 411 Fed. Appx 361 (2d Cir. 2011) (agreement to arbitrate in a *purchase order* between commercial entities did not apply to a separate *distribution agreement* because the language of the purchase order specifically limited it to "disputes arising out of or in connection with" the purchase order); *Leadertex v. Morganton Dyeying & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) (arbitration clause limited to "any controversy or claim arising under or in relation to this order [a purchase order] or contract, or any modification thereof" so did not cover a defamation claim brought by one company against another based on representations that it was generally dishonest in its business practices and in the practice of selling defective goods); *Esparza v. SmartPay Leasing, Inc.*, 765 Fed. Appx. 218 (9th Cir. 2019) (arbitration clause did not cover dispute because it was limited to claims "arising from or in any way related to" the lease and the plaintiff's claims "do not arising from or relate to the lease").

In *Wexler v. AT&T Corp*., 211 F. Supp. 3d 500 (E.D.N.Y. 2016), also cited by Plaintiff, the court conceded that it could not refuse to enforce the agreement based on unconscionability or by concluding the scope of the agreement did not cover the claims because that would be "in tension" with Supreme Court precedent. *Id*. at 504. So, the court found another avenue to reach the same result, recasting it as a "formation" question, thus attempting to elude Supreme Court precedent requiring courts to resolve all doubts concerning the scope of the arbitration

[5] The majority's decision in *Revitch* acknowledges it conflicts with the Fourth Circuit's decision in *Mey*. It also conflicts with Supreme Court precedent, as explained by the dissent. The parties in *Revitch* did not dispute an agreement was formed between AT&T and the plaintiff. The question was the scope of the agreement, and because the Supreme Court has explained that "any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration," the majority's decision flouted that precedent. *Id*. at 726-28 (Bennett, J. dissenting). It also, as the dissent explained, used state law contract rules to disfavor arbitration in violation of Supreme Court precedent. *Id*. *See also Recent Cases: Contract Law – Federal Arbitration Act – Ninth Circuit Refused to Enforce Infinite Arbitration Agreement – Revitch v. DirectTV, LLC*, 977, F.3d 713 (9th Cir. 2020), 134 Harv. L. Rev. 2871 (explaining that the "reasoning" of the Ninth Circuit "arguably contravened state law and Supreme Court precedent" and that "weaknesses in the court's reasoning leave its opinion vulnerable to reversal by the Supreme Court").

clause in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983). This type of judicial two-step reflects precisely the type of "judicial hostility" the FAA was enacted to prevent. Because the court acknowledged the existence of an agreement to arbitrate, the only issue should have been whether the scope of that agreement covered the dispute. But because the answer to *that* question did not achieve the outcome desired, the court reformulated the issue as one of contract formation. Yet, the acknowledgement of the existence of an agreement undermines the court's reasoning.[6] Further, the court's subsequent conclusion in *Wexler* that no contract was formed because it was unreasonable to believe an agreement with a cellular phone company to provide *cell phone* service could cover disputes relating to messages received *on that cell phone* seems dubious, and again reflects the judicial hostility to arbitration the FAA was enacted to combat.[7]

Finally, as to Plaintiff's public policy arguments, the response to any objection to the perceived fairness of enforcing the arbitration agreement is not to ignore the text or rewrite it, or twist and bend to find some theory to invalidate it. Congress is free to amend the FAA to limit its application to only disputes relating to the subject matter of the contract or eliminate pre-dispute arbitration agreements entirely. Indeed, just last year Congress amended the FAA to exclude sexual harassment and assault cases from coverage under the FAA.[8] But, thus far, Congress has not acted to otherwise limit the scope of the FAA, despite proposed bills to eliminate *all* pre-dispute arbitration in employment,[9] and it is not the province of this Court to usurp that legislative role and rewrite the agreement to reflect how the Plaintiff wishes the law were written.

**CONCLUSION**

Based on the above, Defendant respectfully requests the Court grant Defendant's motion to compel arbitration under the FAA and stay the action pending arbitration.

---

[6] The court in *Hearn v. Comcast Cable Comms., LLC*, 415 F. Supp. 3d 1155 (N.D. Ga. 2019) used the same method and is, therefore, subject to the same infirmities.

[7] *Wexler* was also decided in 2016 prior to a string of Supreme Court cases decided beginning in 2019 and did not have the benefit of the Supreme Court's repeated refusal to permit courts to use state law principles to disfavor arbitration.

[8] *See* Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Public Law No. 117-90 (2022).

[9] *See, e.g.*, S.B. 505 (2021), Forced Arbitration Injustice Repeal Act.

Dated: Melville, New York
November 4, 2022

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEY FOR DEFENDANT*
58 South Service Rd., Ste. 250
Melville, New York 11747
(631) 247-0404

By: s/ *Jeffrey W. Brecher*

JEFFREY W. BRECHER, ESQ.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, **DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE ACTION** was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Western District's Local Rules and the Western District's Rules on Electronic Service upon the following parties and participants:

Andrew M. Debbins, Esq.
CONNORS LLP
*Attorneys for Plaintiff*
1000 Liberty Building
Buffalo, New York 14202
(716) 852-5533
amd@connorsllp.com

s/ Jeffrey W. Brecher
JEFFREY W. BRECHER, ESQ.

4871-1237-5356, v. 1