UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER OLDACRE, individually
and on behalf of all others similarly
situated,

          Plaintiff,                                   22-CV-577 (JLS) (HKS)

       v.

ECP-PF CT OPERATIONS,

          Defendant.
_____

## DECISION AND ORDER

      Plaintiff Christopher Oldacre filed a complaint, on behalf of himself and all others similarly situated, against Defendant ECP-PF CT Operations (Dkt. 1). He alleges that Defendant failed to pay him and other manual workers on a weekly basis in violation of New York Labor Law § 191. Dkt. 1, at 1. The Hon. John L. Sinatra, Jr. referred this case to the undersigned for all proceedings under 28 U.S.C. §§ 636(b)(1)(A), (B) and (C). Dkt. 9. On September 16, 2022, Defendant moved to compel Oldacre's claims to arbitration and stay this action (Dkt. 9). Plaintiff opposed (Dkt. 14) and Defendant replied (Dkt. 17).

## BACKGROUND

**I.    RELEVANT FACTS**

      Defendant employed Plaintiff as a Front Desk Associate from approximately October 2021 to January 2022 at a Planet Fitness location in Cheektowaga, New York. Dkt. 1, at ¶ 11; Dkt. 10, at ¶ 5. When all Planet Fitness employees are hired, including Plaintiff, they are offered a complimentary "Black Card" gym membership as an

employee perk—which allows them to use any Planet Fitness gym in the United States. Dkt. 10, at ¶ 7. Employees can sign up at any time during their employment, but they are not required to. *Id.* at ¶ 8.

During his employment, Plaintiff enrolled as a Black Card employee-member. *Id.* at ¶ 9. When enrolling, Plaintiff signed a membership agreement with Planet Fitness (the "Black Card Agreement"). *See* Dkt. 10–2, at 2. Members or employees who enroll in the Black Card membership can cancel the contract within three days after signing it, which Plaintiff did not do. Dkt. 10, at ¶ 12. The Black Card Agreement contains an arbitration clause, which can be opted-out of within thirty days by providing written notice to Planet Fitness.[1] *Id.* at ¶¶ 13–14. Plaintiff did not exercise this option. *Id.* at ¶ 14.

Plaintiff initiated this action alleging that Defendant violated New York Labor Law § 191 by paying him, and other manual workers, on a bi-weekly rather than weekly basis. *See* Dkt. 1. Defendant now seeks to compel arbitration of Plaintiff's claims pursuant to the arbitration clause and delegation provision in the Black Card Agreement. *See* Dkt. 11.

## II. PARTIES' ARGUMENTS

Defendant argues that the parties agreed to arbitrate, pointing to the Black Card Agreement that Plaintiff signed. Dkt. 11, at 14–15; *see* Dkt. 18, at 2. Defendant further argues that any issues of arbitrability should be decided by the arbitrator because the parties "clearly[] and unmistakably reserved that question for the arbitrator." Dkt. 11, at

---

[1] The arbitration clause also contains a class-action waiver and allows claims to be resolved in small claims court. *See* Dkt. 10-2, at 4; Dkt. 10, at ¶ 13.

2

15. And even if the Court were to determine the scope of the arbitration clause, Defendant maintains that the arbitration clause is broad and Plaintiff's claims fall within its scope. *Id.* at 16.

In response, Plaintiff argues that the arbitration clause does not cover employment disputes, and therefore this action falls outside its scope. Dkt. 14, at 8. Moreover, Plaintiff argues that, when applied to claims completely unrelated to the underlying contract, the arbitration clause constitutes an "infinite arbitration clause"—which is unenforceable and unconscionable under New York law.[2] *Id.* at 9. Therefore, because Plaintiff's claims regarding his employment have nothing to do with his gym membership, he contends that the arbitration clause is both unenforceable and unconscionable. *Id.* at 11. Plaintiff further argues that Defendant failed to show that Plaintiff agreed to arbitrate claims related to his employment. *Id.* at 12. According to Plaintiff, there was not mutual assent because no reasonable person would expect that "signing up for a gym membership would obligate them to arbitrate claims wholly unrelated to the gym membership but instead arising from their employment." *Id.* at 14.

In reply, Defendant reasserts its argument that issues of arbitrability must be decided by the arbitrator in accordance with the delegation provision, noting that

---

[2] Plaintiff relies on a line of cases in which some courts have refused to enforce arbitration agreements when the claims lack a nexus to the underlying contract that contains the arbitration agreement. *See McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 276 (S.D.N.Y. 2021) ("[T]he Ninth Circuit and a handful of district courts around the country have declined to compel arbitration of claims based on 'infinite arbitration clauses' where the claims at issue lack any nexus whatsoever to the agreement containing the clause."); *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 504–05 (E.D.N.Y. 2016) (refusing to enforce "infinite arbitration clause" based on lack of mutual assent).

3

"Plaintiff has not challenged the enforceability of the delegation provision." Dkt. 17, at 6–7.

## III. LEGAL STANDARDS

On a motion to compel arbitration,[3] courts "apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation mark and citation omitted). The court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks, alterations, and citation omitted).

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Arbitration "is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019). There "is a general presumption that the issue of arbitrability should be resolved by the courts." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). But this "presumption in favor of judicial review may be overcome if the parties have 'clearly and

---

[3] The Court evaluates Defendant's motion to compel arbitration as a non-dispositive motion pursuant to 28 U.S.C. § 636(b)(1)(A). *See Cornelius v. Macy's Retail Holdings, Inc.*, No. 18CV678JLSJJM, 2021 WL 363973, at *2 (W.D.N.Y. Feb. 3, 2021), *appeal dismissed* (Apr. 23, 2021) ("[M]otions to compel arbitration are non-dispositive."); *Cumming v. Indep. Health Ass'n, Inc.*, No. 13-CV-969-A F, 2014 WL 3533460, at *1 (W.D.N.Y. July 16, 2014) ("The prevailing view among District Courts in this Circuit is that decisions to compel arbitration are non-dispositive.")

4

unmistakably' delegated to an arbitrator the authority to resolve issues of arbitrability." *McCoy v. Dave & Buster's, Inc.*, No. 15CV0465JFBAYS, 2018 WL 550637, at *4 (E.D.N.Y. Jan. 24, 2018) (citation omitted); *accord Nicosia*, 834 F.3d at 229 ("The question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."); *Contec,* 398 F.3d at 208 ("[T]he issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.") (citation omitted).

Therefore, when "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529; *see also Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019) ("[W]hen the parties have contracted to submit the question of the arbitrability of a dispute to arbitrators, courts must respect and enforce that contractual choice."). This is true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

The party "seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). This burden "does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed. Once the existence of an agreement to arbitrate is established, the

burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Id.* at 102 (internal quotation marks and citation omitted); *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."). But "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

## DISCUSSION

### I. THE ARBITRATOR MUST DECIDE ISSUES OF ARBITRABILITY

#### A. Agreement to Arbitrate

Defendant has met its burden in demonstrating that an agreement to arbitrate existed—namely, the arbitration clause and in particular here, the delegation provision. Attached to its motion, Defendant submitted a copy of the the Black Card Agreement— containing the arbitration clause and delegation provision—which Plaintiff signed. *See* Dkt. 10-2, at 2. Plaintiff does not dispute this. *See* Dkt. 14, at 13. Plaintiff only challenges whether there was an agreement to arbitrate claims unrelated to his employment, arguing that there was not mutual assent to arbitrate claims untethered from the underlying contract. *Id.* at 12–15. But the Court need not decide that issue, because Plaintiff has not met his burden to show that the delegation provision is

6

"inapplicable or invalid." *Zachman*, 49 F.4th at 102. Indeed, Plaintiff's opposition does not even mention the delegation provision. *See* Dkt. 14.

### B. Clear and Unmistakable Evidence

The delegation provision contained in the arbitration clause "clearly and unmistakably" demonstrates that the parties intended to have issues of arbitrability determined by the arbitrator. *Contec*, 398 F.3d at 208. Plaintiff does not argue otherwise. *See* Dkt. 14. The delegation provision provides:

> The arbitrator, and not any local, state, or federal court, shall have the exclusive authority to determine all issues regarding the interpretation, applicability, and enforcement of this agreement and all issues regarding the arbitrability of the dispute, including but not limited to any claim that all or part of the arbitration provision is void or voidable.

Dkt. 10-2, at 2.

Clear and unmistakable evidence "is found through '[b]road language expressing an intention to arbitrate all aspects of all disputes,' or a delegation provision." *Morehouse v. PayPal Inc.*, No. 21-CV-4012 (RA), 2022 WL 912966, at *7 (S.D.N.Y. Mar. 28, 2022) (quoting *Metro. Life*, 919 F.3d at 191). Here, the "plain language of the Delegation Clause shows that [Plaintiff] ha[s] clearly and unmistakably delegated questions of arbitrability to the arbitrator." *Schwartz, v. Sterling Entertainment Enterprises, LLC, & Sportsnet New York*, No. 21-CV-01084-PAC, 2021 WL 4321106, at *6 (S.D.N.Y. Sept. 23, 2021); *see also Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 470 (S.D.N.Y. 2017) (arbitration agreement containing a "very broad arbitration clause together with a delegation clause that gave the arbitrators the power to decide issues of arbitrability" constituted clear and unmistakable evidence). Therefore, because "the parties agreed to 'empower an arbitrator to decide issues of arbitrability,' . . . that

7

empowerment 'serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 660 (S.D.N.Y. 2020) (quoting *Contec*, 398 F.3d at 208).

### C. <u>Challenge to Delegation Provision</u>

In moving to compel arbitration, Defendant seeks to enforce the delegation provision. See Dkt. 11, at 15–16; Dkt. 17, at 7. "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr.*, 561 U.S. at 71. But a "challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

Here, as in *Rent-a-Ctr.*, the precise agreement to arbitrate at issue is the delegation provision. See 561 U.S. at 70. Accordingly, the Court "must enforce the parties' choice to delegate to an arbitrator the question of arbitrability 'unless the party challenging arbitration challenges the delegation provision specifically.'" *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 34 (W.D.N.Y. 2020) (quoting *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 195 (E.D.N.Y. 2019)); *accord Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 675–76 (2016) ("[W]here a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration."); *see also Morehouse*, 2022 WL 912966, at *7 ("When a delegation provision exists, a court may not intervene unless a party challenges the delegation provision specifically.") (citation and internal quotation

8

mark omitted). A "challenge to another provision of the arbitration clause in which the delegation provision is found does not prevent the court from enforcing the delegation provision itself." *Doctor's Assocs., Inc. v. Alemayehu*, No. 18-CV-276 (JCH), 2020 WL 13538883, at *3 (D. Conn. May 29, 2020)

Plaintiff does not challenge the delegation provision, nor does his opposition even mention it. *See* Dkt. 14. Instead, Plaintiff argues that, when "applied in a matter unrelated to the underlying contract, [the arbitration clause] constitutes an 'infinite arbitration clause' which is unenforceable and unconscionable under New York law." *Id.* at 9. The "law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld." *Vargas*, 378 F. Supp. 3d at 196. Whether Plaintiff's arguments are framed as a challenge to the arbitration clause in its entirety, or only to the arbitration clause's applicability to matters unrelated to the underlying contract, Plaintiff does not specifically challenge the delegation provision. *See Brkic v. Dumbo Moving & Storage, Inc.*, No. 22-CV-07029 (CM), 2023 WL 1069889, at *2 (S.D.N.Y. Jan. 27, 2023) ("As Plaintiff argued that the Arbitration Agreement as a whole is unenforceable, rather than challenging the delegation provision specifically, Supreme Court case law determines that such a challenge must be left to the arbitrator.").

Along the same lines, Plaintiff argues that Defendant "failed to show that Plaintiff[] agreed to arbitrate such claims [unrelated to his employment]." Dkt. 14, at 12. According to Plaintiff, the Black Card Agreement "does not manifest assent to arbitrate disputes arising from [Plaintiff's] employment" because "no reasonable person would think that signing up for a gym membership would obligate them to arbitrate claims

9

wholly unrelated to the gym membership but instead arising from their employment." *Id.* at 12, 14. While framed as a contract formation challenge, Plaintiff's argument is again based on the scope of the arbitration clause. The Supreme Court's decision in *Rent-A-Ctr.* "established that not only are arbitration agreements severable from larger agreements, but specific delegation provisions that are contained within an arbitration agreement are severable as well." *Senderovic v. Lasership, Inc.*, No. 3:18CV250(VLB), 2018 WL 6790169, at *5 (D. Conn. Nov. 21, 2018); *accord Monarch Consulting*, 26 N.Y.3d at 675 ("[D]elegation clauses . . . are severable from larger arbitration provisions."). Because Plaintiff does not specifically challenge the delegation provision, these issues of arbitrability must be resolved by the arbitrator, not the Court. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017) ("Plaintiffs' challenge must be aimed squarely upon the delegation of arbitrability itself, rather than the remainder of the Arbitration Provision or the . . . Agreement as a whole."); *Monarch Consulting*, 26 N.Y.3d at 676 (compelling arbitration where "a review of the record reveal[ed] that [plaintiffs] did not specifically direct any challenge to the delegation clauses empowering the arbitrators to determine gateway questions of arbitrability"). Therefore, Defendant's motion to compel arbitration is GRANTED.[4]

---

[4] Defendant seeks to compel the named Plaintiff's claims to arbitration. *See* Dkt. 11, at 17. "Courts in this Circuit regularly hold that 'the earliest time to move to compel arbitration [as to unnamed class members] is after class certification.'" *Shalomayev v. Altice USA, Inc.*, No. 21-CV-5540 (MKB), 2022 WL 2359406, at *9 (E.D.N.Y. June 30, 2022) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, No. 10-CV-6950, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *see also Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This Court will not compel absent putative class members who are not before this Court to binding arbitration or issue a ruling regarding the enforceability of the provision."). Here, Plaintiff has not yet sought class certification,

10

## II. THIS ACTION MUST BE STAYED

Defendant also requests to stay this action until arbitration proceedings have concluded. Dkt. 9, at 1; Dkt. 11, at 17. The Second Circuit has held that "a district court is required to enter a stay when a party has so requested and 'all claims have been referred to arbitration.'" *Bernardino v. Barnes & Noble Booksellers, Inc.*, 763 F. App'x 101, 104 (2d Cir. 2019) (Summary Order) (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015)). Therefore, because all of Plaintiff's claims will be referred to arbitration, Defendant's request to stay this action is GRANTED.

### CONCLUSION

For the above reasons, Defendant's Motion to Compel Arbitration and Stay the Action (Dkt. 9) is GRANTED.

**SO ORDERED.**

**DATED:** May 15, 2023
Buffalo, New York

H. KENNETH SCROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

---

and therefore the Court does not address any issues related to the putative class members.

11